1201 North Market Street
20th Floor
Wilmington, DE 19801
www.connollygallagher.com

CONNOLLY GALLAGHER LLP

Alan R. Silverstein
TEL: (302) 757-7322
EMAIL: asilverstein@connollygallagher.com

July 17, 2025

**VIA CM/ECF AND HAND DLEIVERY**
The Honorable Sherry R. Fallon
J. Caleb Boggs Federal Building
844 N. King Street
Unit 14
Room 6100
Wilmington, DE 19801-3555

      **RE:** ***Belvac Production Machinery, Inc. v. Adonis Acquisition Holdings LLC***, <u>**(C.A. No. 1:25-cv-00166-JLH-SRF)**</u>

Dear Magistrate Judge Fallon:

      Plaintiff Belvac Production Machinery, Inc. ("Belvac") submits the following letter brief regarding ESI preservation in advance of the Hearing to Resolve a Discovery Dispute, set for July 29, 2025, D.I. 66.

      At the heart of this copyright infringement case lies the question of whether Defendant Adonis Acquisition Holdings LLC ("Adonis") is reproducing Belvac's copyrighted Software[1] in random access memory ("RAM") or other temporary storage in violation of the Copyright Act. Although this litigation in its infancy, Belvac has already detailed at length—in its First Amended Complaint (D.I. 47), as well as in declarations and live witness testimony during the preliminary injunction phase (D.I. 9-1, 20, 40; Ex. A (PI hearing transcript updated) at 5-37)— the reproductive acts in RAM that have occurred or will imminently occur as Adonis continues to operate the Belvac Equipment in which the copyrighted Software is embedded.  Accordingly, evidence from those sources is paramount to Belvac's claims, particularly in view of Adonis' (i) denial that any reproduction (or preparation of a derivative work) has occurred, and (ii) averment that any such reproduction is so fleeting in time that it is subject to a transitory use defense.  *See* D.I. 36 at ¶¶ 5-8; D.I. 35 at 2-3.  Given these specific facts, it is essential that Adonis preserve and produce this information, rather than allow it to be overwritten or otherwise disappear in the ordinary course of operating the Belvac Equipment and associated devices.

---

[1] The capitalized terms "Software," "Belvac Equipment," and "Necker Parts," as used herein, have the meaning set forth in Belvac's First Amended Complaint, D.I. 47 at ¶¶ 12, 24, 62.



The Honorable Sherry R. Fallon
July 17, 2025
Page | 2

For this reason, Belvac has proposed that the ESI order include the following language:

> **Defendant shall preserve the following categories of ESI as they relate to the Software, Belvac Equipment, and Necker Parts, as those terms are respectively defined in Paragraphs 12, 24, and 62 of the First Amended Complaint: (a) deleted, slack, fragmented, or other data only accessible by forensics to the extent that this information evidences use, reproduction, preparation of a derivative work, and/or distribution of the Belvac Software by Defendant; (b) random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system to the extent this information evidences use, reproduction, preparation of a derivative work, and/or distribution of the Belvac Software by Defendant; and (c) server, system, or network logs the extent this information evidences use, reproduction, preparation of a derivative work, and/or distribution of the Belvac Software by Defendant.** [2]

Ex. B (Proposed ESI Protocol).[3] While necessarily deviating from the default ESI preservation requirements set forth in the Default Standard for Discovery ("Default Standard") for this District, Belvac's proposed language ensures that, given the exigencies of this case, critical evidence of Defendant's infringing acts is maintained on a go-forward basis. Moreover, Belvac's proposal requires the preservation of RAM, temporary file, and log information *only if it evidences an infringing act by Adonis* under one of the known-to-Adonis scenarios in which reproduction occurs, thus carefully balancing the probative value of the evidence against any possible, though yet to be articulated, burden on Adonis. This is precisely the type of "good cause" for preservation that the Default Standard contemplates as an exception to the non-preservation default. *See* Default Standard ¶ 1.c.ii; *see also Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419, at *13 n.31 (C.D. Cal. May 29, 2007) ("The Court's decision in this case to require the retention and production of data which otherwise would be temporarily stored only in RAM, is based in significant part on the nature of this case, the key and potentially dispositive nature of the [RAM] Server Log Data which would otherwise be unavailable, and defendants' failure to provide what this court views as credible evidence of undue burden and cost."); *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp 2d 409, 433 n.36 (S.D.N.Y. 2009) (citing *Columbia Pictures* as one example of the fact that "[c]ourts have recognized the relevance of user log data and infringing digital files in copyright infringement actions, and they have ordered litigants to preserve and produce such data").

---

[2] Of these data types, which are pulled directly from Schedule A of the Default Order, RAM data, other temporary files, and system logs are likely the most critical to this case for the reasons explained herein. RAM data would itself include infringing copies of the copyrighted Software. System logs, if preserved rather than written over, should reflect all modified dates for the Software, PLC uptimes/Event Log service start dates (in the case of the PLCs), and instances of Windows Winlogin (in the case of the IMS), each of which is indicative of the fact that a copy has been made by Adonis in RAM or other temporary storage and the timing thereof.

[3] The parties have agreed on all other provisions of the proposed ESI Protocol attached as Exhibit B.

The Honorable Sherry R. Fallon
July 17, 2025
Page | 3

Adonis is well aware of the discrete circumstances in which reproduction occurs based on the filings already submitted in this action, thus reducing any burden that Adonis might incur in preserving the targeted evidence requested. Specifically, it is undisputed that each time Adonis powers on or reboots the Belvac Equipment, including without limitation to install the Necker Parts, a copy of Belvac's embedded, copyrighted programmable logic controller ("PLC") Software is made from an SD memory card to RAM for execution of the Software, with the RAM copy remaining only until the Belvac Equipment is next powered off. D.I. 20 at ¶ 9; D.I. 40 at ¶ 8. Such powering on or rebooting will occur when maintenance is performed, a control panel component malfunctions, and/or there is a local power outage. D.I. 40 at ¶¶ 13-14. Separately, whenever Defendant's personnel access the PLC Software through an external device for any purpose (including to perform troubleshooting, maintenance, or updates), a local copy of the Software is reproduced in the RAM of that external device, where it remains only as long as the non-volatile local copy of the Software remains open on the device. D.I. 20 at ¶¶ 10-12; D.I. 40 at ¶¶ 9-11. Finally, with respect to Belvac's copyrighted IMS Software here at issue, a copy of that Software is created in the RAM of the industrial PC on which the IMS Software resides each time the industrial PC is powered on or rebooted, and it remains there until the machine is powered off. D.I. 47 at ¶ 60.

Further, as to burden, Adonis does not appear even to have investigated how Belvac's requested preservation can be accomplished. Rather, during the meet and confer, counsel for Adonis stated that "we don't even know if it's technically possible to comply." Ex. C (July 7, 2025, email from H. Kliebenstein to D. Finkelson). Adonis has provided no indication that it has consulted with either its own internal IT personnel or external resources to determine technical mechanisms available to accomplish what Belvac asks. That does not meet the standard for showing undoing burden. It is Belvac's understanding that RAM data, logs showing RAM activity, and/or other temporary files, for example, can generally be captured and saved in real-time and exported to external storage if processes or scripts are put in place to accomplish that real-time retention. With respect at least to the RAM on the external devices (e.g., laptops) that Adonis uses to access the PLC Software, and the RAM on the industrial PC that houses the IMS Software, such real-time retention can be accomplished with the aid of commercially available tools such as, for example, The Volatility Framework, Magnet RAM Capture, or Forensic Toolkit. Moreover, because Belvac has detailed for Adonis the scenarios in which reproduction occurs, Adonis need only perform real-time retention when it is conducting one of the enumerated reproductive acts. Accordingly, burden cannot and should not be a basis on which to deny Belvac its requested relief. *See, e.g., Columbia Pictures*, 2007 WL 2080419, at *8 ("Based upon the evidence regarding the estimated volume of data resulting from the logging of solely the [RAM] Server Log Data in issue (as opposed to all data) and the other evidence presented, the court finds that defendants would not be unduly burdened as a consequence of the volume of Server Log Data if required to preserve and produce such data.").

Adonis has represented as recently as March 2025 that (i) it has not rebooted or powered off/on the Belvac Equipment, and (ii) no copies of the PLC Software have been made in RAM. *See* D.I. 35 at 2. Belvac must be able not only to investigate those assertions, but also to obtain information about such infringing acts going forward in order to prove, for example, when

The Honorable Sherry R. Fallon
July 17, 2025
Page | 4

Adonis commits such acts and how frequently.  Otherwise, Belvac may be left only with Adonis' own self-serving, "it never happened" testimony, when the manner in which the Belvac Equipment is operated in the ordinary course, as well the steps required for deploying the Necker Parts, indicate that cannot possibly be true.  Belvac requests that Adonis preserves a limited set of temporary ESI, narrowly tailored in scope to accomplish this necessary objective.

      For the above reasons, Belvac respectfully requests that the Court enter the ESI Protocol attached as Exhibit B.

Respectfully submitted,

*/s/ Alan R. Silverstein*

Alan R. Silverstein (#5066)

cc:   All Counsel of Record
Attachments