IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BELVAC PRODUCTION MACHINERY,
INC.,

          Plaintiff,

      v.

ADONIS ACQUISITION HOLDINGS
LLC,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 25-166-JLH-EGT

## REPORT AND RECOMMENDATION

Presently before the Court is the motion of Plaintiff Belvac Production Machinery, Inc. ("Plaintiff" or "Belvac") to dismiss Defendant Adonis Acquisition Holdings LLC's ("Defendant" or "Adonis") counterclaims of fraud and fraudulent inducement.  (D.I. 79).  For the reasons set forth below, the Court recommends that Plaintiff's motion be GRANTED.

## I.    BACKGROUND

Belvac is a Virginia corporation in the business of canning machinery.  (D.I. 47 ¶ 4).  Belvac manufactures continuous motion rotary machinery, including multiple pieces of equipment along the beverage can manufacturing line, such as bodymakers and necking machines, both of which shape beverage cans.  (*Id.* ¶¶ 9-11).  To automate and control these machines, Belvac created proprietary and copyrighted software.  (*Id.* ¶¶ 12-20).  This case arises out of Belvac's prior relationship with non-party Vobev, LLC's ("Vobev") and Vobev's subsequent bankruptcy proceedings.  *See generally In re Vobev, LLC*, No. 24-26346 (Bankr. D. Utah filed Dec. 9, 2024).

Between 2020 and 2024, Vobev purchased several of Belvac's canning machines, including bodymakers and neckers, multiple times through multiple agreements.  (D.I. 47 ¶¶ 24-26).  The machines were all purchased on credit.  (*Id.* ¶¶ 24, 27 & 41).  These canning machines all utilize

Belvac's copyrighted software – and the software is pre-installed on certain machine components. (*Id.* ¶¶ 33-34). By the terms of the parties' agreements, Vobev did not obtain any ownership interest in any of Belvac's software; instead, Vobev merely obtained a non-exclusive license to use Belvac's software on the purchased equipment. (*Id.* ¶¶ 35-40).

On January 12, 2024, Vobev defaulted on its payments for the canning machinery. (D.I. 47 ¶ 41). And on December 9, 2024, Vobev filed for Chapter 11 bankruptcy. (*Id.* ¶ 43). Belvac sought a prepetition trade claim for $16 million for the Vobev agreements but Vobev rejected Belvac's request. (*Id.* ¶ 44; D.I. 73 at 34 ¶ 7). Instead, Vobev sought to enter into an Asset Purchase Agreement ("the APA") with Defendant Adonis. (D.I. 73 at 34 ¶ 8). Under the proposed APA, Adonis would receive (among other things) all of the equipment used in Vobev's canning business – including the canning machinery that Vobev had purchased from Belvac on credit. (D.I. 47 ¶¶ 45-46; D.I. 73 at 34 ¶ 10). Vobev filed notice of the APA with the United States Bankruptcy Court for the District of Utah on January 7, 2025. (*Id.* at 34 ¶ 8).

The present dispute centers around what happened after Vobev filed notice of the APA. On January 9, 2025, the Bankruptcy Court authorized Vobev to pay certain prepetition claims to vendors critical to Vobev's continued operation. (D.I. 73 at 35 ¶¶ 11-12). Belvac sought to enter into such a post-petition agreement with Vobev. (*Id.* at 35 ¶ 14). Negotiations ensued. (*Id.*).

On January 14, 2025, Belvac and Vobev entered into a Critical Vendor Agreement ("the CVA"), which required Vobev to pay $2.5 million towards its debt to Belvac and roughly an additional $1.3 million for previously ordered necker parts that Belvac had yet to supply. (D.I. 47 ¶ 45; D.I. 73 at 35-36 ¶¶ 18-19). After obtaining the CVA, Belvac filed objections to the APA between Vobev and Adonis. (D.I. 73 at 37 ¶¶ 28-29). But the Bankruptcy Court overruled those objections and approved the APA on February 7, 2025. (D.I. 47 ¶¶ 46-48; D.I. 73 at 37 ¶¶ 31-32).

Pursuant that APA, Adonis obtained ownership of all of the Belvac canning machinery that Vobev had previously purchased. (D.I. 73 at 34 ¶ 10). The APA also purportedly assigned the newly entered CVA to Adonis. (D.I. 47 ¶ 49; D.I. 73 at 37 ¶¶ 31 & 34).

The parties here vehemently dispute what rights (if any) Adonis received under the CVA and APA to the Belvac software used by the purchased equipment. (D.I. 47 ¶¶ 49-65; D.I. 73 at 36-38 ¶¶ 24-27, 30 & 36-42). On February 11, 2025, Belvac filed the present action against Adonis for copyright infringement in connection with the latter's use of the copyrighted Belvac software. (*See generally* D.I. 1). Belvac filed a First Amended Complaint on April 30, 2025 (D.I. 47), adding further allegations regarding Adonis's purportedly improper use of the copyrighted software – namely that every instance of access to the software necessarily creates an unauthorized copy of it (*id.* ¶¶ 58-65). After its partial motion to dismiss was denied (D.I. 56), Adonis filed an Answer and Counterclaims (D.I. 73). Relevant here, Adonis asserts against Belvac counterclaims of fraud and fraudulent inducement, accusing Belvac of lying to Vobev to obtain the CVA (which now binds Adonis). (D.I. 73 at 39-40; *see also* D.I. 47 ¶¶ 47-49). Adonis also asserts counterclaims of breach of contract and tortious interference with business expectancy (*id.* at 41-42), as well as a counterclaim for a declaratory judgment of no copyright infringement (*id.* at 42).

On August 13, 2025, Belvac filed the present motion under Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of Adonis's claims of fraud and fraudulent inducement as inadequately pled. (*See* D.I. 79 & 80). Briefing was complete on September 3, 2025. (D.I. 87 & 88).

## II.    LEGAL STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). The Court is not, however, required to accept as

true bald assertions, unsupported conclusions or unwarranted inferences. *See Mason v. Delaware (J.P. Court)*, C.A. No. 15-1191-LPS, 2018 WL 4404067, at *3 (D. Del. Sept. 17, 2018); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This plausibility standard obligates a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (cleaned up).

## III.  <u>DISCUSSION</u>

Adonis claims that Belvac "intended to deceive Vobev regarding [Belvac's] intent to permit continued use of the software" when the CVA was formed. (D.I. 73 at 39 ¶¶ 51-52). In Adonis's view, this constitutes fraud for which Belvac should be liable to Adonis. (*Id.* at 39 ¶¶ 49-54). Adonis also asserts a counterclaim of fraudulent inducement against Belvac, claiming that Vobev only entered into the CVA relying on the understanding that Belvac would not object to the anticipated sale of equipment to Adonis. (*Id.* at 40 ¶¶ 55-65). Belvac seeks dismissal of these fraud-based counterclaims because (1) Adonis does not allege that non-party Vobev suffered any harm or that Adonis was the recipient of any fraud, (2) the counterclaims fail to meet Rule 9(b)'s

particularity requirement and (3) the counterclaims are barred by Utah's economic loss doctrine.[1] The Court's analysis begins and ends with the first ground – that Adonis's counterclaims fail to adequately allege any cognizable harm under Utah law.

### A.    Whether Adonis's Fraud Counterclaims Are Adequately Pled

Belvac argues that dismissal of the fraud counterclaims is warranted because Adonis does not adequately plead fraud or fraudulent inducement against any single entity.  (*See* D.I. 80 at 5-9).  To state a claim for either fraud or fraudulent inducement under Utah law, a party must allege:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003) (fraud); *Keith v. Mountain Resorts Dev., L.L.C.*, 337 P.3d 213, 225-26 (Utah 2014) (fraudulent inducement).

In this case, Adonis alleges that it was harmed by fraud that Belvac perpetrated on Vobev. (D.I. 73 at 39-40 ¶¶ 49-53 & 56-64).  But Utah law requires the injured party to also be the recipient of the allegedly fraudulent representation.  *See Musselman v. Keele*, 559 P.3d 64, 72-73 (Utah. Ct. App. 2024).  Therefore, in Belvac's view, Adonis improperly combines factual allegations as to Vobev, on the one hand, and Adonis, on the other hand, to create fraud claims.  (D.I. 80 at 4-9). Specifically, Adonis fails to allege that Belvac made a false statement intended to deceive Adonis (as opposed to Vobev) or that Adonis (as opposed to Vobev) was induced by any false Belvac

---

[1]    Adonis's fraud-based claims are brought under Utah law.  (D.I. 73 at 39 & 41).  Belvac does not propose an alternative jurisdiction and instead "assumes for the purposes of this motion only that Utah law governs these [counterclaims]."  (D.I. 80 at 6 n.3).  Because the parties agree, the Court sees no need to undertake a choice-of-law analysis and will also apply Utah law in evaluating whether Adonis's fraud claims are sufficiently pled.

statement. (*Id.* at 6-7). According to Belvac, this mix-and-match pleading style fails to adequately state any claim sounding in fraud between Belvac and Adonis. (*Id.* at 7-8). The Court agrees.

Starting with the fraud claim, Adonis does not allege that Belvac made any fraudulent representations to Adonis. Adonis's counterclaim alleges that "Adonis has been injured by Belvac's fraudulent intent at the time of contracting" but that "Belvac intended to deceive ***Vobev*** regarding its intent to permit continued use of the software at the time that the CVA was executed." (D.I. 73 at 39 ¶¶ 52-53 (emphasis added)). Adonis fails, however, to include any allegation that Belvac directed any intentionally deceptive statement at Adonis (rather than Vobev). Instead, Adonis's factual allegations are focused on Belvac's representations to Vobev – and Belvac's subsequent actions that are purportedly inconsistent with those representations. (D.I. 73 at 35 ¶ 15, 37 ¶¶ 29-30, 39 ¶¶ 51-52). But, from this, the Court cannot plausibly infer that Belvac made any representation to Adonis – let alone a fraudulent one. Therefore, Adonis's counterclaim for fraud is inadequately pled and should be dismissed.

The Court reaches the same result for Adonis's fraudulent inducement claim. Adonis's factual allegations all relate to Belvac's purported misrepresentations to Vobev – not Adonis. (D.I. 73 at 35 ¶ 15, 37 ¶¶ 29-30 & 40 ¶¶ 57-62). Without more, the Court cannot infer that Belvac made any representations to Adonis, fraudulent or otherwise. Or that those representations induced Adonis (as opposed to Vobev) to act in any way. There is simply no factual support to plausibly infer that Adonis has been the target of fraudulent inducement by Belvac. Dismissal is thus warranted for this counterclaim as well.

In a last-ditch attempt to save its counterclaims, Adonis argues that it was assigned all of Vobev's rights, including the specific claims subject to the pending motion to dismiss. (D.I. 87 at 4). But nowhere does Adonis indicate that it is asserting these counterclaims on behalf of Vobev.

(*See* D.I. 73 at 39-41). And even if Adonis were asserting these fraud counterclaims on Vobev's behalf, Adonis does not plausibly allege (or even state) how *Vobev* was harmed by any of Belvac's representations.[2] The counterclaims would therefore still fail. The Court thus recommends that Adonis's counterclaims of fraud and fraudulent inducement be dismissed.[3]

### B. Adonis's Request for Leave to Amend

In a footnote, Adonis requests leave to amend its counterclaims. (D.I. 87 at 5 n.2). Under these circumstances, the request for leave to amend is not adequately before the Court. *See LabMD, Inc. v. Boback*, 47 F.4th 164, 192 (3d Cir. 2022) ("[A] plaintiff must properly request leave to amend a complaint in order for the district court to consider whether to permit amendment. A plaintiff properly requests amendment by asking the district court for leave to amend and submitting a draft of the amended complaint, so that the court can judge whether amendment would be futile." (citation omitted)); *see also Fletcher-Harlee Corp v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252-53 (3d Cir. 2007) ("In non-civil rights cases, the settled rule is that properly requesting leave to amend a complaint requires submitting a draft amended complaint."). Adonis's request to amend is therefore denied.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court recommends that Belvac's motion to dismiss Adonis's counterclaims for fraud and fraudulent inducement (D.I. 79) be GRANTED.

---

[2]    Adonis's attempt – in its answering brief – to now assert these counterclaims on Vobev's behalf is improper. (*See* D.I. 87 at 4 ("[U]nder the CVA, Vobev paid Belvac over $3.7 million from the funds approved by the Bankruptcy for payment to critical vendors that Vobev would have put to different uses had it known the true facts.")). An opposition brief cannot be used to supplement the pleadings to survive a motion to dismiss under Rule 12(b)(6). *See Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007).

[3]    As it is unnecessary to do so, the Court does not reach the other grounds for dismissal raised by Belvac – *e.g.*, failure to plead with particularity and the economic loss doctrine.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be limited to ten (10) pages and filed within fourteen (14) days after being served with a copy of this Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2). Any responses to the objections shall limited to ten (10) pages and filed within fourteen days (14) after the objections. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.


Dated:  January 12, 2026

_____
UNITED STATES MAGISTRATE JUDGE