IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BELVAC PRODUCTION MACHINERY, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 25-166-JLH-EGT |
| ADONIS ACQUISITION HOLDINGS LLC, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

Presently before the Court is Defendant Adonis Acquisition Holdings LLC's ("Defendant" or "Adonis") motion for leave to amend its Answer and Counterclaims to address deficiencies previously identified by the Court.  (D.I. 99).  For the reasons set forth below, Adonis's motion is GRANTED.

## I.   BACKGROUND

The Court set forth a detailed factual background in a recent opinion.  (*See* D.I. 98 (R&R); *see also* D.I. 105 (R&R adopted)).  The Court will not revisit those facts and instead will only discuss facts relevant to the present dispute.

Adonis previously asserted against Plaintiff Belvac Production Machinery, Inc. ("Plaintiff" or "Belvac") counterclaims of fraud and fraudulent inducement, accusing Belvac of lying to third-party Vobev to obtain the Critical Vendor Agreement ("CVA"), an agreement that now binds Adonis.  (D.I. 47 ¶¶ 47-49).[1]  In response to Belvac's motion to dismiss under Federal Rule of

---

[1]   Adonis also previously asserted – and continues to assert – counterclaims of breach of contract and tortious interference with business expectancy, as well as a counterclaim for a declaratory judgment of no copyright infringement.  (*Compare* D.I. 73 at 41-43 ¶¶ 66-88, *with* D.I. 106, Ex. B at 50-52 ¶¶ 111-33).  Those counterclaims are not at issue here.

Civil Procedure 12(b)(6), the Court recommended dismissal of Adonis's fraud and fraudulent inducement counterclaims as failing to adequately plead any cognizable harm under Utah law. (D.I. 98 at 5-7).  For fraud claims, Utah law requires the injured party to also be the recipient of any fraudulent representation.  (*Id.* at 5).  Because Adonis (the injured party) did not plausibly allege that it (as opposed to Vobev) was the recipient of any fraudulent representations by Belvac, Adonis failed to plausibly allege that it suffered any legally cognizable harm.  The Court thus recommended dismissal on January 12, 2026.  (D.I. 98).  The Report and Recommendation was adopted on February 5, 2026.  (D.I. 105).

On February 6, 2026, Adonis filed a letter brief in support of a request for leave to amend its Answer and Counterclaims to address the pleading deficiencies identified in the Court's ruling. (D.I. 106; *see also* D.I. 99 (request to amend)).  In its proposed amended pleading, Adonis adds factual details regarding Belvac's allegedly fraudulent conduct in negotiating the CVA with Vobev, as well as allegations regarding Vobev's assignment of all claims and causes of action to Adonis.  (*See, e.g.*, D.I. 106, Ex. B at 34-41 ¶¶ 14-53; *see also id.* at 45-50 ¶¶ 88-110).  Adonis now specifically pleads that it is asserting fraud claims as Vobev's assignee of such claims.  (*Id.* at 47 ¶¶ 97-98 & 50 ¶¶ 109-110).  Belvac opposes amendment.  (D.I. 107).

## II.    LEGAL STANDARD

A party may amend its pleading once as a matter of course within twenty-one days of either (1) service of the pleading or (2) if a responsive pleading is required, the earlier of service of such responsive pleading or a motion under Rule 12(b), (e) or (f).  FED. R. CIV. P. 15(a)(1).  In all other instances, a party may only amend its pleading if it receives "the opposing party's written consent or the court's leave," which the court should "freely give . . . when justice so requires."  FED. R. CIV. P. 15(a)(2).  A court should grant leave unless the moving party has unduly delayed, exhibited

2

bad faith or dilatory motive or repeatedly failed to cure deficiencies of prior amendments, or if allowing amendment either is futile or would unduly prejudice the opposing party. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990) ("[L]eave to amend should be granted freely."). The non-movant bears the burden of showing why leave to amend should not be granted. *See Sander v. Light Action, Inc.*, C.A. No. 10-684-LPS, 2012 WL 985576, at *4 (D. Del. Mar. 21, 2012).

If a party seeks leave after a deadline imposed by the scheduling order, then the more stringent "good cause" standard of Rule 16 applies. *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020); *see also* FED. R. CIV. P. 16(b)(4). This "good cause" inquiry "focuses on the moving party's burden to show due diligence" in belatedly seeking amendment and not prejudice to the non-movant. *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010); *see also* FED. R. CIV. P. 16(b) advisory committee's note to the 1983 amendment.

## III.    **DISCUSSION**

Belvac opposes amendment on two grounds: lack of good cause and futility. (*See generally* D.I. 107). The Court will address each in turn.

### A.    **Good Cause**

The deadline to amend pleadings was December 12, 2025. (D.I. 57). Both parties agree that, because the deadline for amending pleadings has passed, Adonis must first make a good cause showing under Rule 16. (D.I. 106 at 1; D.I. 107 at 1). Belvac argues that Adonis lacks good cause under the circumstances here, relying on the Third Circuit's prior disapproval of parties that wait to see if a court dismisses their pleading before seeking amendment. (D.I. 107 at 1 (citing *Jang v. Boston Sci. Scimed, Inc.*, 729 F.3d 357, 368 (3d Cir. 2013)). The Court disagrees with Belvac.

It is true that, in *Jang*, the Third Circuit expressed a reluctance to endorse a "wait and see" approach when it comes to seeking leave to amend. *Jang*, 729 F.3d at 368; *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) ("When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied."). But the Third Circuit has also more recently said that "the mere fact that a [party] files a motion to dismiss is not necessarily sufficient to put [the non-movant] on notice that the court will find his complaint to be deficient." *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 249 (3d Cir. 2016).[2] At least one court in this District has recognized the Third Circuit's apparent shift in approach and relied on *Victaulic* to find diligence under Rule 16 where amendment was sought within a month of recommended dismissal. *See Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*, C.A. No. 17-184-JFB-SRF, 2018 WL 3425012, at *3-4 (D. Del. July 16, 2018), *rev'd and remanded on other grounds*, 940 F.3d 1372 (Fed. Cir. 2019). This Court finds it appropriate to do the same here.

Adonis sought amendment within two weeks of the undersigned's recommended dismissal, demonstrating diligence. Although a court is not a "sounding board" for the sufficiency of pleadings, *id.* at *3, courts generally grant leave the first time the sufficiency of the pleadings is tested. *See, e.g.*, *Kurtz v. Westfield Ins.*, 610 F. Supp. 3d 703, 710 (E.D. Pa. 2022) ("Normally, when granting a motion to dismiss for the first time, courts will give a plaintiff leave to file an amended complaint."); *In re Coinbase Glob., Inc. Sec. Litig.*, 2024 WL 4053009, at *24 & n.33 (D.N.J. Sept. 5, 2024) (granting leave to file a third amended complaint because it was the first

---

[2]    In fact, in *Victaulic*, the Third Circuit explained that its prior statement discouraging a "wait and see" approach "was of no practical import, since in *Jang* we reversed the District Court's entry of judgment on the pleadings and remanded for further proceedings, explicitly noting that the plaintiff remained 'free to file a new motion for leave to amend.'" 839 F.3d at 252 (quoting *Jang*, 729 F.3d at 369)).

time the court had ruled on the sufficiency of the pleadings); *In re Toronto-Dominion Bank / First Horizon Corp. Sec. Litig.*, 2025 WL 3302536, at \*28 (D.N.J. Nov. 26, 2025) (granting leave to amend after plaintiffs had amended four times because it was the "first time that the Court ha[d] ruled on the adequacy of the pleadings."); *cf. Lake v. Arnold*, 232 F.3d 360, 374 (3d Cir. 2000) ("[W]e are inclined to give the District Court even broader discretion when, as here, the court has already granted the requesting party an opportunity to amend its complaint.").  Indeed, the Third Circuit has "rarely upheld a dismissal with prejudice of a complaint when the plaintiff has been given no opportunity to amend." *Victaulic*, 839 F.3d at 250.  Because Adonis sought leave to amend within mere weeks after the first time the Court ruled on the sufficiency of its pleading, Adonis acted with sufficient diligence under Rule 16.  Good cause exists under the facts here.

### B.    Futility

According to Belvac, Adonis's request to amend should still be denied under Rule 15 because amendment would be futile.  (D.I. 107 at 2-3).  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  Futility of amendment is therefore determined under the same standard as a motion to dismiss under Rule 12(b)(6). *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  "The District Court determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to the [party seeking amendment]." *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007).

Here, Belvac argues that amendment would be futile because Adonis's measure of damages is legally insufficient and, further, because Utah's economic loss doctrine bars these claims. (D.I. 107 at 3).[3]  The Court will dispose of the economic loss doctrine first.

---

[3]    Indeed, Belvac has repeatedly argued that Utah's economic loss doctrine bars Adonis's claims.  (D.I. 80 at 11-14; D.I. 88 at 7-10; D.I. 107 at 3).

Relevant here, Utah's economic loss doctrine bars tort claims when a contract covers the same "subject matter" – *i.e.*, a contractual duty exists that is commensurate in scope with the duty underlying the tort claim. *See Reighard v. Yates*, 285 P.3d 1168, 1176-77 (Utah 2012). In 2018, the District Court for the District of Utah asked the Utah Supreme Court to decide whether the economic loss doctrine barred fraudulent inducement claims. *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 435 P.3d 193, 194 (Utah 2018). The Utah Supreme Court answered a narrower question: "whether the Utah economic loss rule applies to a fraudulent inducement claim that is duplicative of a breach of contract claim." *Id.* at 196. The court held that the fraudulent inducement claim was barred because the defendant's pre-contractual statement was included as an express warranty in the finalized contract. *Id.* at 196-97. But the court expressly left open the "possibility of a fraudulent inducement exception in some other circumstance." *Id.* at 198.

Courts have consistently applied the economic loss doctrine when the contract includes a warranty that covers the related fraud claim. *See, e.g.*, *Preventive Energy Solutions, L.L.C. v. nCap Ventures 5, L.L.C.*, 2023 WL 7148434, at *10 (10th Cir. Oct. 31, 2023). When the underlying contract does not contain such a warranty, however, courts have had to predict whether the Utah Supreme Court would permit a fraudulent inducement claim to proceed. *See, e.g.*, *Ennis v. Alder Prot. Holdings, LLC*, 2021 WL 409785, at *8-11 (D. Utah Feb. 5, 2021); *Vincent T. Taylor & Assoc., Inc. v. Mgmt. & Training Corp.*, 2023 WL 6377600, at *5-6 (D. Utah Sept. 29, 2023). These courts have ultimately predicted that the Utah Supreme Court would permit such claims if they are based on a duty "independent" of any contractual duty. *See, e.g.*, *Ennis*, 2021 WL 409785, at *9-10; *see also Hermansen v. Tasulis*, 48 P.3d 235, 240 (Utah 2002) ("[T]he initial inquiry in cases where the line between contract and tort blurs is whether a duty exists independent of any contractual obligations between the parties. When an independent duty exists, the economic loss

6

rule does not bar a tort claim 'because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule.'" (quoting *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256, 1263 (Colo. 2000))).  Given the Utah Supreme Court's decisions in *Reighard* and *Hermansen*, this Court also predicts that the Utah Supreme Court would likely hold that fraudulent inducement claims premised on an independent duty are not barred by the economic loss doctrine. *Accord Ennis*, 2021 WL 409785, at \*9-11; *Vincent*, 2023 WL 6377600, at \*5-6.

Applying that doctrine here, the Court does not agree that Adonis's claims are necessarily barred.  The parties disagree on whether the CVA granted Vobev – and through assignment, Adonis – a license to use Belvac's software.  (*Compare* D.I. 107 at 3 ("Adonis alleges only that Belvac misrepresented future performance under the CVA, ***the very obligations Adonis says the CVA imposed***."), *with* D.I. 106, Ex. B ¶ 114 ("Under the Customary Trade Terms between Vobev and Belvac, no additional payment is necessary to use Belvac's software to operate the equipment."); *see also* D.I. 47 ¶ 49 (Belvac alleging in First Amended Complaint that the CVA "does not convey any rights to software, including but not limited to Belvac Software, to Adonis, whether by ownership, license or otherwise")).  If the CVA permits Adonis (as assignee) to use Belvac's software, then the economic loss doctrine likely bars Adonis's claims because the CVA would impose an obligation on Belvac to permit use of its software; Adonis's assigned fraud claims would therefore be duplicative.  *See HealthBanc*, 435 P.3d at 196.  But if the CVA does not give Adonis (as assignee) that right to use the Belvac software, then there is no contractual right to use it (or sue for inability to use it).  And any fraud claims relating to that software use would not be duplicative of a contract claim.  In that instance, Belvac's representations to Vobev are actionable

separate and apart from a contractual duty and, therefore, Adonis's assigned claims are not barred by the economic loss doctrine.[4] *See Hermansen*, 48 P.3d at 240.

Moreover, when there is a disagreement about a contract's meaning and scope, pleading an alternate theory is permitted. *See Mudbots, LLC v. Ascend Constr. Sols., Inc.*, 2025 WL 2442852, at *4 (D. Utah Aug. 25, 2025) (at motion to dismiss stage, claim for negligent misrepresentation and fraudulent nondisclosure not barred by the economic loss doctrine because it was unclear "whether the contract cover[ed] the subject of the tort claims"); *see also Sefcik v. Cravey*, 2025 WL 1124530, at *6 (D. Utah Apr. 16, 2025) (permitting fraudulent inducement and breach of contract claims to proceed past a Rule 12(c) motion because it was "not clear whether the claims might be duplicative"); *cf. MIG Invs. LLC v. Aetrex Worldwide, Inc.*, 852 F. Supp. 2d 493, 513 (D. Del. 2012) (permitting an unjust enrichment claim to proceed in the alternative because there was a "dispute concerning this contract, particularly with regard to the meaning of certain terms."). The Court will not bar Adonis from asserting its assigned fraud claims when it is unclear if the Belvac-Vobev contract imposed on Belvac an obligation to permit use of its software. Therefore, the Court is not persuaded by Belvac's first futility ground.

As to Belvac's second futility argument that Adonis's damages theory is insufficient as a matter of law (D.I. 107 at 2), the Court largely disagrees. For fraud-based claims, Utah permits two types of damages. First, plaintiffs can recover the benefit of the bargain – the difference in value a party believed it would receive based on the misrepresentation less the value of what was actually received. *See Dilworth v. Lauritzen*, 424 P.2d 136, 137-38 (Utah 1967); *see also Dugan v. Jones*, 615 P.2d 1239, 1247 (Utah 1980); *Pace v. Parrish*, 247 P.2d 273, 277 (Utah 1952). Another

---

[4]    Belvac never argues that no independent duty existed, instead arguing only that Adonis cannot take inconsistent positions that the contract and fraud claims are based on a duty to license Belvac's software. (*See* D.I. 107 at 3).

measure of recovery for fraud claims is consequential damages that were reasonably foreseeable and are established with reasonable certainty. *See Ong Int'l (USA) Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 457 & n.44 (Utah 1993) (citing RESTATEMENT (SECOND) OF TORTS § 549 (A.L.I. 1976)). Under either theory, the harm must have been suffered by the party that relied on the false statement. *See Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003) (fraud); *Keith v. Mountain Resorts Dev., L.L.C.*, 337 P.3d 213, 225-26 (Utah 2014) (fraudulent inducement).

Adonis appears to allege two different bases for damages for its assigned fraud claims. First, Adonis seeks to recover the total amount that Vobev paid to Belvac under the CVA – approximately $3.7 million – because that amount was "the direct out-of-pocket monies paid by Vobev to Belvac in detrimental reliance" on Belvac's alleged misrepresentations. (D.I. 106, Ex. B ¶¶ 96, 108). But "detrimental reliance" is not a cognizable theory of damages for fraud under Utah law. And neither is mere repayment of what was originally paid under the contract absent recission.[5] *See Dugan v. Jones*, 615 P.2d 1239, 1247 (Utah 1980) ("The plaintiff in an action for fraud has the option to elect to rescind the transaction and recover the purchase price or to affirm the transaction and recover damages."). In terms of recoverable damages, Adonis may seek the benefit of the bargain (which it does, as discussed below) and consequential damages. *Dilworth*, 424 P.2d at 137-38; *Ong Int'l*, 850 P.2d at 457 & n.44. This "out of pocket" theory is neither.

The second measure of damages alleged is the "difference in value between the bargain Vobev believed it was receiving . . . and the value it actually received, which is zero dollars." (D.I. 106, Ex. B ¶¶ 96, 108). According to Belvac, Vobev's assets were sold for "full value" and

---

[5]    A party may also seek recission. *See Ong Int'l*, 850 P.2d at 457 ("This Court has also affirmed a judgment allowing recission . . . in a fraud action."). But Adonis is not pursuing this remedy for its fraud claims, focusing only on damages. (*See* D.I. 106, Ex. B. ¶ 98 ("Adonis brings this claim as Vobev's assignee and seeks to recover all ***damages***, in an amount to be determined at trial . . . ." (emphasis added)); *see also id.* ¶ 110).

therefore Vobev was not harmed by any misrepresentations – only Adonis was harmed.[6] (D.I. 107 at 2). But, asserting the claim as assignee, Adonis alleges that Vobev did not receive the benefit of its bargain – namely, unencumbered necker machines that could be sold during the bankruptcy proceedings. (*See* D.I. 106, Ex. B ¶¶ 96, 108). And Adonis further alleges that any encumbrance resulting from the inability to use the Belvac software resulted in a difference in value that is legally cognizable harm to Vobev. (*See id.*). That is straightforward example of the benefit-of-the-bargain rule. *See Dilworth*, 424 P.2d at 137-38.

Belvac effectively asks the Court to make a factual finding at the pleading stage that Vobev suffered no harm. (*See* D.I. 107 at 2 ("Vobev's assets were sold for full value.")). But when determining futility, the Court must construe the facts in the light most favorable to the party seeking leave. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). And the Court finds it at least plausible that Vobev was harmed in some tangible and legally cognizable way. (*See, e.g.,* D.I. 106, Ex. B ¶¶ 46-52). As an assignee, Adonis would be entitled to recover damages for that harm. Because amendment would not be futile, Adonis will be granted leave to amend its Answer and Counterclaims to add its fraud claims.

## IV.    CONCLUSION

For the foregoing reasons, Adonis's motion for leave to amend (D.I. 99) is GRANTED. IT IS HEREBY ORDERED that, on or before April 6, 2026, Adonis shall docket its Amended Answer and Counterclaims (D.I. 106, Ex. A).

Dated:  April 2, 2026

_____
UNITED STATES MAGISTRATE JUDGE

---

[6]    Belvac also argues that Adonis "simply declares the CVA valueless" because Adonis alleges that the CVA's actual value is zero dollars. (D.I. 107 at 2). At this pleading stage and resolving all reasonable inferences in Adonis's favor, it is at least plausible that software-less neckers were valueless. That is sufficient. *See Burlington*, 114 F.3d at 1420.